# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Filed: August 13, 2013

———

No. 10-3091

UNITED STATES OF AMERICA,
APPELLEE

v.

DAVID A. DUVALL, ALSO KNOWN AS TONE,
APPELLANT

———

Consolidated with 11-3114

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:09-cr-00236-RCL-1)

———

On Petition for Rehearing En Banc

———

Before: GARLAND, *Chief Judge*; HENDERSON, ROGERS**,
TATEL, BROWN, GRIFFITH, KAVANAUGH**, and SRINIVASAN*,
*Circuit Judges*; WILLIAMS**, *Senior Circuit Judge*

# **O R D E R**

Upon consideration of appellant's petition for rehearing en banc, the response thereto, and the absence of a request by any member of the court for a vote, it is

**ORDERED** that the petition be denied.

## **Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:     /s/
Jennifer M. Clark
Deputy Clerk

* Circuit Judge Srinivasan did not participate in this matter.

** A statement by Circuit Judge Rogers concurring in the denial of the petition for rehearing en banc is attached.

** A statement by Circuit Judge Kavanaugh concurring in the denial of the petition for rehearing en banc is attached.

** A statement by Senior Circuit Judge Williams concurring in the denial of the petition for rehearing en banc is attached.

ROGERS, *Circuit Judge*, concurring in the denial of rehearing en banc: I write regarding Judge Kavanaugh's critique today of a related case, *United States v. Epps* (D.C. Cir. 2013). Our decision in *Epps* adhered to the interpretation of *Marks v. United States*, 430 U.S. 188 (1977), adopted by the en banc court in *King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991), which is binding on the court. *See LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc). Any "seriously flawed application of the *Marks* principle," Kavanaugh Op. at 3, if present, is thus to be found in *King v. Palmer*, not *Epps*. Critiquing *Epps* because "*Marks* means that, when one of the opinions in a splintered Supreme Court decision has adopted a legal standard that would consistently produce results with which a majority of the Court in that case necessarily would agree, that opinion controls," Kavanaugh Op. at 5-6, is a direct challenge to *King v. Palmer.*

## I.

As examined at length in *Epps*, 707 F.3d at 348–51, *King v. Palmer* precluded adoption of the interpretation of *Marks* followed in other circuits that have declared binding Justice Sotomayor's concurring opinion in the splintered decision in *Freeman v. United States*, 131 S. Ct. 2685 (2011). In *King v. Palmer*, the en banc court interpreted *Marks* to mean that, to be binding as representing the narrowest grounds for decision, an opinion "must represent a common denominator of the Court's *reasoning*; it must embody a position implicitly approved by at least five Justices who support the judgment." 950 F.2d at 781 (emphasis added). Under *Marks*' "narrowest grounds" approach, for an opinion to be controlling it must contain a "controlling rationale." *Id.* at 781 n.6. "*Marks* is workable . . . only when one opinion is a logical subset of other, broader opinions." *Id.* at 781. Otherwise, the en banc court reasoned, "[i]f applied in situations where the various opinions supporting the judgment are mutually exclusive, *Marks* will turn a single opinion that lacks majority support into national law." *Id.* at

782. So, "[w]hen . . . one opinion supporting the judgment does not fit entirely within a broader circle drawn by the others, *Marks* is problematic." *Id*. According to the en banc court, *Marks* applies when "the concurrence posits a narrow test to which the plurality must *necessarily agree as a logical consequence* of its own, broader position." *Id.* (emphasis added); *see also Epps*, 707 F.3d at 348 (quoting same).

*King v. Palmer* expressed no ambivalence regarding either its general holding on the proper understanding of *Marks*' "narrowest grounds" rule as requiring a binding opinion to evidence a common rationale and not only a common outcome, or its specific holding that, under its interpretation of *Marks*, in the absence of compatible reasoning by a majority in a splintered Supreme Court decision, "the appropriate course is to hold that contingency enhancements [to plaintiffs' counsel's award of attorneys' fees] will not be available in this circuit." *King v. Palmer*, 950 F.2d at 784 (addressing the "splintered decision" in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987) ("*Delaware Valley II*"), and reversing this court's precedent in *McKenzie v. Kennickell*, 875 F.2d 330 (D.C. Cir. 1989), and portions of previous inconsistent opinions). The en banc court emphasized that a concurring opinion widely assumed to be controlling due to the perceived presence of some sphere of outcome-determined "common ground" constituted only persuasive authority. *Id.* at 775–77. It identified "three distinct approaches to the issue of contingency enhancements in fee-shifting statutes, none of which enjoys the support of five Justices." *Id*. at 782. Given that the Supreme Court had denied a contingency enhancement without a remand in *Delaware Valley II*, the court acknowledged that it "could not authorize the routine awarding of contingency enhancements of whatever size," *id*. at 784, but determined there was no "narrowest opinion" to be derived from the plurality and concurring opinions because "there simply is no practical middle

ground between providing enhancements routinely and not providing them at all," *id.* Then, "[k]eeping in mind that a majority of the Supreme Court clearly agrees that the question of attorneys' fees must not turn into major litigation in itself," the en banc court adopted its own view of "the appropriate course." *Id*. (rejecting "various tests for awarding contingency enhancements" under *Delaware Valley II* adopted by the other circuits because "most of the tests appear to be difficult, if not impossible, to meet in practice").

## II.

*Epps* required the court to interpret a splintered Supreme Court decision to determine if a defendant sentenced pursuant to a Rule 11(c)(1)(C) plea agreement was eligible for a sentencing reduction under 18 U.S.C. § 3582(c)(2). Application of the *Marks* rule adopted in *King v. Palmer* to the Supreme Court's splintered 4-1-4 decision in *Freeman* revealed that Justice Sotomayor's concurring opinion cannot be understood to be the "narrowest grounds" of the majority's ruling, and therefore ought not be treated as controlling.[1] *Epps* explained: "The plurality opinion [in *Freeman*] reject[ed] the concurring opinion's approach, stating its rationale is fundamentally incorrect because § 3582(c)(2) 'calls for an inquiry into the reasons for a judge's sentence, not the reasons that motivated or informed the parties.'" 707 F.3d at 350 (quoting *Freeman*, 131 S. Ct. at 2694 (plurality opinion) (labeling the concurrence's rationale an "erroneous rule")). The dissenting opinion "agree[d] with the plurality that the approach of the concurrence . . . is arbitrary and unworkable" and even "wrong." *Freeman*, 131 S. Ct. at 2703 (dissent). In light of *King v. Palmer*, the only

---

[1] In *United States v. Duvall*, by contrast, the court accepted the parties' stipulation that Justice Sotomayor's concurring opinion was controlling. 705 F.3d 479, 483 (D.C. Cir. 2013).

controlling holding evident from *Freeman* is that courts cannot categorically bar defendants sentenced pursuant to Rule 11(c)(1)(C) plea agreements from eligibility for a sentencing reduction under § 3582(c)(2)*. See Epps*, 707 F.3d at 351.

Consequently, the *Epps* court had to determine, as the en banc court instructed, which reasoning represented "the appropriate course," *King v. Palmer*, 950 F.2d at 784. The *Freeman* plurality had observed that "the statute . . . calls for an inquiry into the reasons for a judge's sentence, not the reasons that motivated or informed the parties," and that the concurrence, "[b]y allowing modification only where the terms of the agreement contemplate it . . . would permit the very disparities that the Sentencing Reform Act seeks to eliminate." *Freeman*, 131 S. Ct. at 2694. The *Freeman* dissent, on the other hand, despaired of being able to determine, where a judge approved the parties' agreed-upon fixed-term sentence under Rule 11(c)(1)(C), what the sentence was "based on," *id*. at 2703 (dissent) (quoting § 3582(c)(2)), a circumstance not present in *Epps*, 707 F.3d at 352 (citing *United States v. Epps*, 756 F. Supp. 2d 88, 92-93 (D.D.C. 2010)). This court adhered to the plurality's interpretation in view of the purpose of the Sentencing Act to reduce unwarranted disparities, Rule 11(c)(1)(C)'s requirement that the sentencing judge approve the plea agreement, and instructions in applicable Sentencing Guidelines policy statements. *Epps,* 707 F.3d at 351–53. (The third member of the panel concluded the issue of Epps' entitlement to sentencing relief was moot. *Id.* at 353 (Brown, J., dissenting)). In so doing, *Epps* also followed the approach adopted in *United States v. Berry*, 618 F.3d 13 (D.C. Cir. 2010), where this court relied on the Guidelines policy statement 1B1.10, which the *Freeman* plurality explained "seeks to isolate whatever marginal effect the since-rejected Guidelines had on the defendant's sentence," thereby "permitting the district court to revisit a prior sentence to whatever extent the sentencing

range . . . was a relevant part of the analytic framework the judge used to determine the sentence or to approve the [Rule 11(c)(1)(C)] agreement." 131 S. Ct. at 2692–93.

The three asserted errors in *Epps* are non-existent: First, *Epps* did not adopt "a novel standard for *Marks* cases." Kavanaugh Op. at 10. Instead, the court correctly concluded that "[u]nder *Marks* [as interpreted in *King v. Palmer*] . . . there is no controlling opinion in *Freeman* because the plurality and concurring opinions do not share common reasoning *whereby one analysis is a 'logical subset*,' *King*, 950 F.2d at 781, of the other." *Epps*, 707 F.3d at 350 (emphasis added for text omitted by Judge Kavanaugh).

Second, a suggestion in the concurring opinion in *United States v. Duvall*, 705 F.3d 479 (D.C. Cir. 2013), regarding possible "weak" or "strong" readings of *King v. Palmer*, *see Duvall*, 705 F.3d at 485-86 (Williams, J., concurring), cannot change the en banc court's unambiguous holding on the proper interpretation of *Marks*' "narrowest grounds." *See* Kavanaugh Op. at 12-13. Nevertheless, *Epps* addressed the suggested "weak reading," anticipatorily explaining why the concurring opinion in *Freeman* still would not be deemed controlling. The court referred under the "weak" reading to the circumstance (as contemplated by the plurality in *Freeman*, 131 S. Ct. at 2694) in which the concurrence in *Freeman* would grant relief and the plurality would not. *See Epps*, 707 F.3d at 350–51 & n.8. Other courts appear not to have considered this circumstance, *see, e.g.*, *United States v. Rivera-Martinez*, 665 F.3d 344, 348 (1st Cir. 2011); *see also In re Sealed Case*, 12-3012, 2013 WL 3305706 at *3 (D.C. Cir. July 2, 2013) (dictum).

Third, *Epps* did not "misappl[y] the '*Marks* corollary' that necessarily governs in cases where there is no one narrowest opinion." Kavanaugh Op. at 17. As described by Judge

Kavanaugh, that corollary requires a court to "run the facts and circumstances of the current case through the various tests articulated by the Supreme Court in the binding case." *Id.* at 18. Whatever its merits, the en banc court never endorsed this corollary to *Marks*, but adhered to its "subset" analysis. *King v. Palmer*, 950 F.3d at 784 & n.7; *see also id.* at 781-82. None of the Supreme Court cases cited by Judge Kavanaugh in discussing vertical *stare decisis*, Kavanaugh Op. at 7-8, includes a binding instruction adopting his *Marks* corollary.[2] So, this court must follow the approach adopted by the en banc court — identifying "the appropriate course," *King v. Palmer*, 950 F.2d at 784 — which *Epps* identified in terms of the undisputed purpose of the Sentencing Reform Act, the plain texts of Rule 11(c)(1)(C) and the Sentencing Guidelines policy, and our own § 3582(c)(2) precedent relying on the policy statement..

Properly understood, Judge Kavanaugh's objection is to the interpretation of *Marks* adopted by the en banc court in *King v. Palmer*. In disagreeing with the result in *Epps*, he revives objections reminiscent of the dissent in *King v. Palmer*, 950 F.2d at 789 (dissent), but the three-judge panel in *Epps* was not free to agree with this position. Judge Williams, concurring in the denial of en banc in *Duvall*, elaborates on why Judge Kavanaugh's criticism of the en banc court's interpretation of *Marks* may lack traction and rebuts his criticisms of *Epps*. Regardless, because the en banc decision in *King v. Palmer* is binding, the suggestion that the court in *Epps* acted other than

---

[2] In *O'Dell v. J.D. Netherland*, 521 U.S. 151 (1997), *see* Kavanaugh Op. at 10-11, a capital case, the Supreme Court discussed another capital case, *Gardner v. Florida*, 430 U.S. 349 (1977), in which the concurring opinion appears to be consistent with *King v. Palmer*'s "subset" interpretation of the *Marks* rule. *See O'Dell*, 521 U.S. at 174-75 (dissent) (pointing out that the *Gardner* opinion identified in *O'Dell* as "the narrow one" embraced the due process rationale of the *Gardner* plurality).

consistently with its constitutional obligation is without merit.

KAVANAUGH, *Circuit Judge*, concurring in the denial of rehearing en banc:

When the Supreme Court issues a splintered decision – that is, a decision where a majority of the Court agrees on the result but not the reasoning – the binding holding is the position taken by those Justices "who concurred in the judgment[] on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). Under the *Marks* principle, when one of the opinions in a splintered Supreme Court decision has adopted a legal standard that would produce results with which a majority of the Court in that case necessarily would agree, that opinion controls.

In a recent case, *Freeman v. United States*, the Supreme Court splintered over whether a defendant who enters into a binding Rule 11(c)(1)(C) plea agreement specifying an agreed-upon sentence is eligible for a sentence reduction after the Guidelines sentencing range for the offense has been retroactively reduced. 131 S. Ct. 2685 (2011). Under the governing statute, defendants are eligible for a sentence reduction if, among other things, they were sentenced "based on" a Guidelines sentencing range that was later lowered by the Sentencing Commission. *See* 18 U.S.C. § 3582(c)(2).

In an opinion by Justice Kennedy, a four-Justice plurality of the *Freeman* Court reasoned that sentences in cases with Rule 11(c)(1)(C) plea agreements are *always* "based on" a Guidelines sentencing range because the Judge's decision to accept such plea agreements is framed by the Guidelines. Thus, in the plurality's view, those defendants are always eligible for a sentence reduction when the applicable Guidelines sentencing range has been retroactively reduced. In an opinion by Chief Justice Roberts, a four-Justice dissent reasoned that sentences in cases with Rule 11(c)(1)(C) plea agreements are *never* "based on" a Guidelines sentencing range because those sentences are based on the plea

agreement, not on the Guidelines.  Thus, in the dissent's view, those defendants are never eligible for a sentence reduction.

Justice Sotomayor, alone concurring in the judgment, adopted a middle ground in *Freeman*.  She reasoned that sentences in cases with Rule 11(c)(1)(C) plea agreements are *sometimes* "based on" a Guidelines sentencing range – namely, when the plea agreement itself makes clear that the basis for the specified sentence is a Guidelines sentencing range.  Thus, in those circumstances, defendants are eligible for a sentence reduction when the applicable Guidelines sentencing range has been retroactively reduced.

The question at issue in this appeal is which opinion is the binding opinion in *Freeman*.  The answer should be obvious.  Justice Sotomayor's opinion resolved the case on the narrowest grounds and is therefore the binding opinion in *Freeman.*  Adhering to her opinion would produce results with which a majority of the *Freeman* Court would agree.  Not surprisingly, every other court of appeals to consider the question has therefore determined that Justice Sotomayor's opinion is the binding opinion.  *See United States v. Rivera-Martínez*, 665 F.3d 344, 347-48 (1st Cir. 2011); *United States v. White*, 429 F. App'x 43, 47 (2d Cir. 2011) (unpublished); *United States v. Thompson*, 682 F.3d 285, 289-90 (3d Cir. 2012); *United States v. Brown*, 653 F.3d 337, 340 & n.1 (4th Cir. 2011); *United States v. Smith*, 658 F.3d 608, 611 (6th Cir. 2011); *United States v. Dixon*, 687 F.3d 356, 359-60 (7th Cir. 2012); *United States v. Browne*, 698 F.3d 1042, 1045 (8th Cir. 2012); *United States v. Austin*, 676 F.3d 924, 927 (9th Cir. 2012); *United States v. Graham*, 704 F.3d 1275, 1278 (10th Cir. 2013); *United States v. Lawson*, 686 F.3d 1317, 1321 n.2 (11th Cir. 2012).  Indeed, in *Freeman* itself, Justice Kennedy's plurality opinion for four Justices referred to Justice Sotomayor's position as the "intermediate position."

131 S. Ct. at 2694 (opinion of Kennedy, J.). And Chief Justice Roberts's dissent for four Justices likewise treated Justice Sotomayor's opinion as binding. *See id.* at 2700-05 (Roberts, C.J., dissenting). And in *United States v. Duvall*, a panel of this Court similarly assumed as much, as did both the Government and the defendant in that case. 705 F.3d 479 (D.C. Cir. 2013).

But then in *United States v. Epps*, a separate panel of this Court adopted Justice Kennedy's plurality opinion in *Freeman*. *United States v. Epps*, 707 F.3d 337, 350-51 (D.C. Cir. 2013). *Epps* means that courts in this Circuit often will find that a sentence was "based on" the Guidelines (and thus the defendant is eligible for a sentencing reduction) even when the sentence indisputably was *not* "based on" the Guidelines under the approaches adopted by a majority of the *Freeman* Court – namely, under the opinions of Justice Sotomayor and Chief Justice Roberts. Indeed, Epps himself would have lost under the approaches adopted by a majority of the Supreme Court in *Freeman*. Under the opinions of Justice Sotomayor and Chief Justice Roberts, Epps's plea agreement indisputably was not "based on" a Guidelines sentencing range.

I find *Epps* to be a seriously flawed application of the *Marks* principle. The *Epps* decision puts us out of step with every other court of appeals that has considered *Freeman* and, more fundamentally, will lead to results in many cases with which a majority of the Supreme Court in *Freeman* would necessarily *disagree*. The point of *Marks*, however, is for lower courts to reach results with which a majority of the Supreme Court in the relevant precedent would *agree*.

In his en banc petition here, Duvall understandably seeks to reap the benefit of the *Epps* ruling. I am voting to deny the

4

petition because the problem is *Epps*, not *Duvall*, and we should await an en banc petition that asks us to reconsider *Epps*. If we receive such a petition, we should grant it and overturn *Epps* so as to follow Justice Sotomayor's binding opinion in *Freeman* and bring our case law into line with every other court of appeals that has considered the question.

I

Vertical stare decisis is absolute and requires lower courts to follow applicable Supreme Court rulings in every case. The Constitution vests Judicial Power in only one *Supreme* Court. U.S. CONST. art. III, § 1. We are subordinate to that one Supreme Court, and we must decide cases in line with Supreme Court precedent.

Vertical stare decisis applies to Supreme Court precedent in two ways. First, the *result* in a given Supreme Court case binds all lower courts. Second, the *reasoning* of a Supreme Court case also binds lower courts. So once a rule, test, standard, or interpretation has been adopted by the Supreme Court, that same rule, test, standard, or interpretation must be used by lower courts in later cases. *See, e.g.*, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); *see also Randall v. Sorrell*, 548 U.S. 230, 243 (2006) (opinion of Breyer, J.) (stare decisis "commands judicial respect for a court's earlier decisions and the rules of law they embody"); *County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 668 (1989) (separate opinion of Kennedy, J.) ("As a general rule, the principle of *stare decisis* directs us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law.").

In most cases, at least five Justices of the Supreme Court join a single majority opinion that agrees on both the result and the reasoning. Justices who join the majority may of course express additional thoughts in a concurrence, but concurrences do not bind lower courts in cases where there is a majority opinion.

In some cases, however, no single opinion commands majority support, even though five or more Justices agree on a result. In those cases, there will be two or more opinions supporting the judgment of the Court, without any one opinion commanding a majority. For much of the Court's history, the precedential value of such splintered decisions was unclear. *See* Justin Marceau, *Plurality Decisions: Upward-Flowing Precedent and Acoustic Separation*, 45 CONN. L. REV. 933, 948-49 (2013); Joseph M. Cacace, Note, *Plurality Decisions in the Supreme Court of the United States: A Reexamination of the* Marks *Doctrine After* Rapanos v. United States, 41 SUFFOLK U. L. REV. 97, 104-05 (2007).

In *Marks v. United States*, the Supreme Court furnished important guidance regarding the stare decisis value of splintered decisions. 430 U.S. 188 (1977). There, the Court articulated a commonsense test to determine which opinion (for example, a plurality opinion or an opinion concurring in the judgment) is the binding opinion in a splintered decision: "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." *Id.* at 193 (internal quotation marks omitted).

*Marks* means that, when one of the opinions in a splintered Supreme Court decision has adopted a legal

standard that would produce results with which a majority of the Court in that case necessarily would agree, that opinion controls. In most cases, the commonsense way to apply *Marks* is to identify and follow the opinion that occupies the middle ground between (i) the broader opinion supporting the judgment and (ii) the dissenting opinion. That middle-ground opinion will produce results that represent a subset of the results generated by the other opinions. By applying that approach, lower courts will decide cases consistently with the opinions of a majority of the Supreme Court in the relevant precedent. *See, e.g.*, *O'Dell v. Netherland*, 521 U.S. 151, 160 (1997) (adopting opinion from *Gardner v. Florida*, 430 U.S. 349 (1977), that predicts majority result even when Justices in prior precedent had based reasoning on different constitutional amendments); *Dickens v. Brewer*, 631 F.3d 1139, 1145 (9th Cir. 2011) ("When applying the *Marks* rule, we look for a legal standard which, when applied, will necessarily produce results with which a majority of the Justices from that case would agree.") (internal quotation marks and brackets omitted); *Planned Parenthood v. Casey*, 947 F.2d 682, 693 (3d Cir. 1991) ("Where a Justice or Justices concurring in the judgment in such a case articulates a legal standard which, when applied, will necessarily produce results with which a majority of the Court from that case would agree, that standard is the law of the land."); *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (narrowest opinion must be "logical subset of other, broader opinions" and "must represent a common denominator of the Court's reasoning; it must embody a *position* implicitly approved by at least five Justices who support the judgment") (emphasis added).

The *Marks* rule is an essential aspect of vertical stare decisis: "The binding opinion from a splintered decision is as authoritative for lower courts as a nine-Justice opinion. While

the opinion's symbolic and perceived authority, as well as its duration, may be less, that makes no difference for a lower court. This is true even if only one Justice issues the binding opinion." *Planned Parenthood*, 947 F.2d at 694.[1]

In interpreting most splintered Supreme Court decisions, the *Marks* rule is not especially complicated. But on rare occasions, splintered decisions have no "narrowest" opinion that would identify how a majority of the Supreme Court would resolve all future cases. *Marks* itself did not have reason to specifically address that situation. But in that situation, the necessary logical corollary to *Marks* is that lower courts should still strive to decide the case before them in a way consistent with how the Supreme Court's opinions in the relevant precedent would resolve the current case. *See King*, 950 F.2d at 784 (confronting this circumstance and stating that when a decision "provides no controlling legal holding," it nevertheless has "binding impact"); *see, e.g.*, *Nichols v. United States*, 511 U.S. 738 (1994). The easy way to do that is for the lower court to run the facts and circumstances of the current case through the tests articulated in the Justices' various opinions in the binding case and adopt the result that a majority of the Supreme Court would have reached. *See, e.g.*, *Bobby v. Dixon*, 132 S. Ct. 26, 31-32 (2011) (reaching result that plurality and concurring opinion from relevant precedent would reach); *City of Ontario v. Quon*, 130 S. Ct. 2619, 2629 (2010) (reaching result when two "approaches – the plurality's and Justice Scalia's . . . lead

---

[1] To be clear, the goal for a lower court under *Marks* is not to speculate or predict how a *future* Supreme Court might decide a case. The goal is to determine how the principles set forth by the Supreme Court in a *prior* decision would apply to the current case facing the lower court. Thus, Judge Williams is incorrect to suggest that I would require lower courts to predict future Supreme Court action. *See* Williams Op. at 10.

to the same result"); *Rapanos v. United States*, 547 U.S. 715, 758 (2006) (Roberts, C.J., concurring) (cases with no controlling opinion like *Rapanos* have to be interpreted on a "case-by-case basis"); *id.* at 810 (Stevens, J., dissenting) (when at least five Justices – the dissent plus either the plurality or concurrence – would reach a given result, then lower courts should reach that result).[2]

Indeed, if a lower court ever has doubt about the predictive utility of a single opinion from a splintered Supreme Court decision, this opinion-by-opinion methodology is a foolproof way to reach the correct result in the lower court's subsequent decisions. Again, that is really just common sense in a system of absolute vertical stare decisis.

## II

Now back to *Freeman*. Applying the *Marks* rule to *Freeman* is fairly easy, which no doubt explains why every other court of appeals has reached the same conclusion: Justice Sotomayor's *Freeman* opinion is the binding opinion from that case.

In *Freeman*, the Supreme Court considered whether a defendant who entered into a binding Rule 11(c)(1)(C) plea

---

[2] When the Supreme Court itself applies *Marks*, it is not bound in the same way that lower courts are bound by *Marks* to strictly follow the narrowest opinion from a prior splintered Supreme Court decision. That's because the Supreme Court is free to reconsider or refine or tweak its own precedents – including splintered precedents – and it does so in appropriate cases. Lower courts, by contrast, are not free to reconsider or refine or tweak Supreme Court precedents. *Marks* is therefore even more important at the lower court level.

agreement specifying an agreed-upon sentence was eligible for a sentence reduction after the relevant Guidelines sentencing range for the offense had been retroactively reduced. Federal law permits a sentence reduction when a defendant "has been sentenced to a term of imprisonment *based on* a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2) (emphasis added). The key question in *Freeman* was whether the sentence in a case involving a Rule 11(c)(1)(C) plea agreement is "based on" a Guidelines sentencing range.

In a plurality opinion written by Justice Kennedy, a group of four Justices concluded that sentences in cases with Rule 11(c)(1)(C) plea agreements are *always* "based on" a Guidelines sentencing range, because "the court's acceptance" of the plea agreement must itself be "based on the Guidelines." *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (opinion of Kennedy, J.) (citing U.S. SENTENCING GUIDELINES MANUAL § 6B1.2); *see id.* at 2690-95. Another group of four Justices, in a dissent written by Chief Justice Roberts, concluded that Rule 11(c)(1)(C) sentences are *never* based on a Guidelines sentencing range, because the sentences are "based on" the plea agreement itself rather than on the Guidelines. *See id.* at 2700-05 (Roberts, C.J., dissenting). And Justice Sotomayor, who concurred in the judgment alone, concluded that Rule 11(c)(1)(C) sentences are *sometimes* "based on" a Guidelines sentencing range. *See id.* at 2695-700 (opinion of Sotomayor, J.). Justice Sotomayor explained that sentences in Rule 11(c)(1)(C) cases are "based on" the plea agreements, but some such plea agreements are in turn "based on" a Guidelines sentencing range, whereas other Rule 11(c)(1)(C) plea agreements are not. Under Justice Sotomayor's theory, the sentence in a Rule 11(c)(1)(C) case is "based on" a Guidelines sentencing

range if the plea agreement makes "clear that the basis for the specified term is a Guidelines sentencing range." *Id.* at 2697.

Following Justice Sotomayor's opinion with regard to the "based on" issue would produce results with which a majority of the Supreme Court in *Freeman* would agree because – to put it in simple terms – "sometimes" is a middle ground between "always" and "never." In other words, when Justice Sotomayor concludes that a plea agreement was based on the Guidelines, she would agree with the result reached under Justice Kennedy's opinion for four Justices. When she concludes that a plea agreement was not based on the Guidelines, she would agree with the result reached under Chief Justice Roberts's opinion for four Justices. But unlike every other court of appeals, *Epps* did not follow this commonsense approach to interpreting *Freeman.*

As I see it, *Epps* erred in several independent ways.

*First*, the *Epps* panel articulated a novel standard for applying *Marks* to splintered Supreme Court decisions: If the Supreme Court opinions in the majority do not share a "common rationale," then there is no binding opinion for lower courts to follow, even if applying one of the opinions would produce results with which a majority of the Supreme Court would agree. *United States v. Epps*, 707 F.3d 337, 349 (D.C. Cir. 2013).

But *Marks* does not require the multiple opinions supporting the Supreme Court's judgment to employ a "common rationale." After all, in splintered cases, there are multiple opinions precisely *because* the Justices did not agree on a common rationale. *See, e.g.*, *O'Dell v. Netherland*, 521 U.S. 151, 160 (1997) (adopting controlling opinion from *Gardner v. Florida*, 430 U.S. 349 (1977), despite the fact that plurality and concurrences based reasoning on different

constitutional amendments); *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.) (recognizing opinions of Justices Stewart and White as controlling from *Furman v. Georgia*, 408 U.S. 238 (1972), even though their opinions did not employ common rationale with all other members of majority). Even though it is often not possible to identify a "common rationale" in the multiple opinions from a splintered decision, lower courts can still reach a *result* consistent with the opinions of a majority of the Supreme Court. They can do so by following the opinion that would lead to an outcome that a majority of the Supreme Court in the governing precedent would have reached if confronted with the current case.[3] With respect to *Freeman*

---

[3] The joint *Epps* opinion by Judges Rogers and Williams cited this Court's precedent in *King v. Palmer* as support for *Epps's* "common rationale" principle. *See Epps*, 707 F.3d 337; *King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991). But *King v. Palmer* does not require that the opinions forming a majority share a "common rationale" in order for *Marks* to apply. In his *Duvall* concurrence, Judge Williams explained his view that *King v. Palmer* is susceptible to either a "weak" or "strong" reading. *United States v. Duvall*, 705 F.3d 479, 485 (D.C. Cir. 2013) (Williams, J., concurring in the judgment). Under the so-called weak reading of *King*, the controlling opinion in a splintered decision is the opinion that predicts a result with which a majority of the Supreme Court from the relevant precedent would agree. *See id.* at 487 (reading "would seem to require only that as a purely factual matter cases producing an *outcome* in favor of the defendant under Justice Sotomayor's opinion would invariably yield an outcome in his favor under the plurality view"). The strong reading of *King* would find an opinion binding only if the opinion has a "common rationale" with the other opinions necessary to form a majority. I believe what Judge Williams described as the weak reading of *King* is most consistent with *Marks* and with *King* itself. Indeed, that reading of *King* must be correct because, among other things, *King* identified the opinions of Justices Stewart and White in *Furman v.*

and the "based on" issue, Justice Sotomayor's opinion does just that, as every other court of appeals has recognized.[4]

*Second*, *Epps* suggested (apparently in the alternative) that, even if the *Marks* rule focuses on identifying the opinion that would achieve results with which a majority of the Supreme Court would agree and does not depend on whether there was a "common rationale" among the opinions making up the Supreme Court majority, *Freeman* has no narrowest opinion that would always lead to the result that a majority of the Supreme Court would reach in future cases. *Epps* hypothesized a situation where Justice Sotomayor, despite taking the middle ground, would supposedly disagree with both Justice Kennedy's four-Justice plurality opinion and Chief Justice Roberts's four-Justice dissenting opinion. *See Epps*, 707 F.3d at 350 n.8. As Justice Kennedy's plurality

---

*Georgia*, 408 U.S. 238, as the narrowest opinions in *Furman*. *King*, 950 F.2d at 781. There were five separate opinions for the Justices in the majority in *Furman*, and none of those five Justices joined any of the others' opinions. Those five opinions certainly did not have a "common rationale." The opinions of Justices Stewart and White were binding because they would produce results in future cases with which a majority of the Court in *Furman* would agree.

Judge Rogers and Judge Williams thus are not correct in suggesting that I disagree with *King* on this point. Rather, of the two plausible readings of *King* that Judge Williams previously identified in his *Duvall* concurrence, I simply believe the weak reading of *King* to be more consistent with *Marks*.

[4] Judge Williams's opinion respecting the denial of en banc essentially collapses the *Epps* "common rationale" standard into the requirement that lower courts follow the opinion that would lead to a result that a majority of the Supreme Court would reach. If so, then my disagreement with Judge Williams relates only to the second and third points discussed in the text of my opinion here. That is not, however, how the *Epps* opinion itself appeared to describe its "common rationale" standard.

opinion stated, however, the sole question resolved by *Freeman* was "whether defendants who enter into 11(c)(1)(C) agreements that specify a particular sentence may be said to have been sentenced '*based on*' a Guidelines sentencing range, making them eligible for relief under § 3582(c)(2)." *Freeman*, 131 S. Ct. at 2691 (opinion of Kennedy, J.) (emphasis added). And on the question whether a defendant's sentence was "based on" a Guidelines sentencing range, there is no circumstance where Justice Sotomayor would reach a result different from all of the other eight Justices. Given Justice Sotomayor's conclusion that the sentences for Rule 11(c)(1)(C) defendants are *sometimes* "based on" a Guidelines sentencing range, Justice Sotomayor's conclusion would necessarily coincide in any given case with either the plurality's conclusion (which determined that such sentences are *always* "based on" the Guidelines) or with the dissent's conclusion (which determined that such sentences are *never* "based on" the Guidelines).[5] So under *Marks*, Justice Sotomayor's opinion is binding with respect to the "based on" question.

---

[5] *Epps* suggested that Justice Kennedy's plurality opinion may not *always* find a Rule 11(c)(1)(C) plea agreement to be "based on" a Guidelines sentencing range. That is incorrect. The *Freeman* plurality determined that "if the judge uses the sentencing range as the beginning point" when imposing the sentence, "then the Guidelines are in a real sense a basis for the sentence." 131 S. Ct. at 2692 (opinion of Kennedy, J.). And district court judges are required to calculate the Guidelines sentencing range as their beginning point before imposing a Rule 11(c)(1)(C) sentence. *See* U.S. SENTENCING GUIDELINES MANUAL § 6B1.2(c). So under the plurality approach, a sentence in a Rule 11(c)(1)(C) case will always be "based on" a Guidelines sentencing range. Indeed, this Court recently said just that about Justice Kennedy's plurality opinion. *See In re Sealed Case*, No. 12-3012, slip op. at 5 (D.C.

*Epps* premised its conclusion that Justice Sotomayor's opinion was not the narrowest on the idea that Justice Sotomayor would allow a sentencing reduction in certain Rule 11(c)(1)(C) cases involving career offenders and offenders subject to a mandatory minimum, whereas (according to *Epps*) none of the other eight Justices supposedly would. That is, moving beyond the "based on" question, *Epps* claimed that Justice Sotomayor would reach a different conclusion than the other eight Justices on the question whether defendants in cases involving career offenders and offenders subject to a mandatory minimum are *ultimately eligible* for a sentence reduction under Section 3582(c)(2). But in those cases, Justice Sotomayor would not allow a sentence reduction; indeed, no Justice would.

To explain: To obtain a sentencing reduction under Section 3582(c)(2), the defendant not only must show that the sentence was "based on" a Guidelines sentencing range, but also must meet an additional requirement. The defendant must show that the "*applicable* guideline range" was

Cir. July 2, 2013). In *Sealed Case*, we stated: Using Justice Kennedy's plurality approach, "a sentence that emerges from a Rule 11(c)(1)(C) plea agreement is *always* eligible for a subsequent reduction because '[t]he Guidelines require the district judge to give due consideration to the relevant sentencing range, even if the defendant and prosecutor recommend a specific sentence as a condition of the guilty plea.' " *Id.* (quoting *Freeman*, 131 S. Ct. at 2692 (opinion of Kennedy, J.)) (emphasis added); *see also United States v. Brown*, 653 F.3d 337, 339 (4th Cir. 2011) (under plurality approach, "a district court can *always* grant § 3582(c)(2) relief to a defendant who enters into a Rule 11(c)(1)(C) plea agreement") (emphasis added); *United States v. Rivera-Martínez*, 665 F.3d 344, 347 (1st Cir. 2011) ("Even in cases in which sentencing follows the execution of a C-type plea agreement, the sentencing judge is required to take the guidelines into account when deciding whether to accept the agreement and impose the agreed sentence.").

subsequently lowered. U.S. SENTENCING GUIDELINES MANUAL § 1B1.10(a)(2)(B) (emphasis added); *see* 18 U.S.C. § 3582(c)(2) (sentence revision must be "consistent with applicable policy statements issued by the Sentencing Commission"). In cases where a defendant's applicable Guidelines sentencing range involves a career offender or mandatory minimum provision, the fact that the Guidelines sentencing range for the offense of conviction – for example, a crack-cocaine Guideline – was later lowered would not alone suffice to support a Section 3582(c)(2) sentencing reduction. That is because, in cases involving a career offender or defendant subject to a mandatory minimum, the "applicable" Guidelines sentencing range is the range for career offenders or offenders subject to a mandatory minimum. And in such a case, that Guidelines sentencing range would not have been lowered even if, say, the relevant crack-cocaine Guideline had been lowered. In those circumstances, none of the opinions in *Freeman* – not Justice Kennedy's opinion, not Justice Sotomayor's opinion, not Chief Justice Roberts's opinion – would support a Section 3582(c)(2) reduction.

Indeed, the Sentencing Commission has made clear that a reduction is not available in those cases. The Application Note to Section 1B1.10 of the Guidelines, which governs sentence reductions, specifically states that a defendant may not obtain a sentence reduction if "the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision (*e.g.*, a statutory mandatory minimum term of imprisonment)." U.S. SENTENCING GUIDELINES MANUAL § 1B1.10, Application Note 1(A); *see id.*, amend. 759 (effective Nov. 1, 2011) (defining the term "applicable guideline range").

Notwithstanding the language of Guidelines Section 1B1.10, *Epps* premised its conclusion that Justice Sotomayor's *Freeman* opinion is not the narrowest opinion on the notion that Justice Sotomayor – alone among the *Freeman* Justices – *would allow* a sentence reduction for career offenders and offenders subject to a mandatory minimum, supposedly because the plea agreement itself would not have rested on the career offender or mandatory minimum range. The *Epps* Court's assessment of Justice Sotomayor's opinion thus necessarily presupposes that she would ignore the separate Guidelines requirement (which is binding on federal courts) that the *applicable* Guidelines range, which in those circumstances would be a career offender or mandatory minimum provision, must also be lowered in order for a defendant to be eligible for a sentence reduction. Unlike the *Epps* panel, I see no basis for thinking that Justice Sotomayor would ignore that Guidelines requirement.[6]

So contrary to *Epps*'s assertion, Justice Sotomayor's opinion would not reach a different result than Justice

---

[6] Moreover, the *Epps* premise also ignores this Court's decision in *Berry*, where we already held that a Section 3582(c)(2) sentencing reduction is *not* available when the applicable Guidelines sentencing range has not been lowered because of the operation of a career offender or mandatory minimum provision. *See United States v. Berry*, 618 F.3d 13 (D.C. Cir. 2010). Notably, in *Duvall*, Judge Williams specifically called for the en banc court to overrule *Berry*. Judge Williams's desire to overrule *Berry* becomes understandable when one appreciates that the premise of *Epps* – namely, that Justice Sotomayor would still grant relief in career offender or mandatory minimum cases – all but collapses so long as *Berry* is still on the books. However, not only is *Berry* still on the books, but as I noted in the text, the Sentencing Commission has made clear that *Berry* is correct and that a sentencing reduction under Section 3582(c)(2) is not appropriate in those circumstances.

Kennedy's opinion or Chief Justice Roberts's opinion in those career offender or mandatory minimum circumstances. Thus, the hypothetical situation that *Epps* identifies as the basis for not following Justice Sotomayor's opinion simply does not exist.

*Third*, despite all that, let's suppose that I am wrong so far and that, indeed, there was no narrowest opinion in *Freeman* that governs all future cases. In other words, suppose that *Epps* is right that Justice Sotomayor's opinion would allow a sentencing reduction under Section 3582(c)(2) in some circumstances where the other eight Justices would not. Even accepting that premise, *Epps* misapplied the *Marks* corollary that necessarily governs in cases where there is no narrowest opinion: In such cases, the lower court should still strive to reach the *result* that a majority of the Supreme Court would have reached under the opinions in the governing precedent.

*Epps* said that lower courts analyzing a splintered decision with no narrowest opinion may unilaterally adopt *any* of the Justices' opinions that supported the Supreme Court's judgment – even an opinion at the extreme end of the spectrum – and apply that one opinion in *all* future cases. *See Epps*, 707 F.3d at 349-51. *Epps* thus leads to an extraordinary situation in which lower courts in *all* subsequent cases may follow a *broader* opinion supporting the judgment and, by doing so, decide future cases differently than a majority of the Supreme Court in the governing precedent would decide the cases. Consider the logic *Epps* employs: Because Justice Sotomayor's approach would allegedly lead to relief in some small subset of Section 3582(c)(2) cases where the other eight Justices would deny relief, lower courts should follow Justice Kennedy's broader approach in *all* cases, even though a majority of the Supreme Court would definitely disagree with

the result achieved under Justice Kennedy's approach in many if not most of those cases. The logic behind *Epps* eludes me.

The core of the *Marks* principle cannot be sidestepped simply because the multiple opinions supporting the Supreme Court's judgment did not produce a single narrowest opinion for all future cases. As explained above, in those rare no-narrowest-opinion cases, the lower court still must strive to reach the result that a majority of the Supreme Court would have reached in the current case, if such a result can be ascertained. The simplest way to do that, again, is to run the facts and circumstances of the current case through the various tests articulated by the Supreme Court in the binding case. Using that approach, lower courts can still reach a *result* consistent with the decision of a majority of the Supreme Court. That is what *Marks*, common sense, and vertical stare decisis all require.[7]

---

[7] Judge Rogers says that the *Marks* corollary is inconsistent with this Court's decision in *King v. Palmer*. I disagree. As I read *King*, the core of the problem there was that the en banc Court simply could not decipher Justice O'Connor's opinion in *Delaware Valley II*, the Supreme Court precedent at issue. *See King*, 950 F.2d at 782 (Justice O'Connor's "concurrence does not contain enough independent reasoning on the question of availability to allow us to compare her position analytically to that of the plurality."); *see also City of Burlington v. Dague*, 505 U.S. 557, 563 (1992) (overruling *Delaware Valley II* on the ground that "we do not see how" Justice O'Connor's *Delaware Valley II* concurrence "can intelligibly be applied"). As the Supreme Court itself later concluded, it was essentially impossible to know how Justice O'Connor's opinion would sensibly apply to the situation presented in *King* (or in any other situation). Indeed, *King* compared Justice O'Connor's opinion in *Delaware Valley II* to Justice Harlan's opinion in *Coolidge v. New Hampshire*, 403 U.S. 443 (1971), which the *King* Court described as having "no reasoning by which one could

So even if one mistakenly thinks that *Freeman* itself has no binding opinion that governs all future cases – as *Epps* said about *Freeman* – the solution still would not be to rule for Epps in his case.   After all, Epps would lose under the approaches adopted by five Justices in *Freeman*: Justice Sotomayor's opinion and Chief Justice Roberts's opinion for four additional Justices.   Under the opinions of those five Justices, Epps's plea agreement was not "based on" a Guidelines sentencing range.   Under Justice Sotomayor's opinion, Epps's sentence was not based on a Guidelines sentencing range because Epps's plea agreement did not make "clear that the basis for the specified term is a Guidelines sentencing range."   131 S. Ct. at 2697 (opinion of Sotomayor, J.).   And of course, under the four-Justice opinion by Chief Justice Roberts, Epps's sentence was not based on a Guidelines sentencing range because Rule 11(c)(1)(C) sentences are, in those Justices' view, never based on a Guidelines sentencing range.

*Epps* never grapples with that critical point.   Nor do Judge Rogers and Judge Williams address that reality in their opinions respecting the denial of en banc review.[8]

---

discern his position" on the legal question at issue.   950 F.2d at 782.   Here, by contrast, we can readily discern Justice Sotomayor's reasoning and what result Justice Sotomayor would reach in Epps's case.

[8] In his opinion respecting denial of en banc, Judge Williams says that, under *King*, the dissent in a splintered decision does not play any role in the *Marks* analysis.   But that is not what *King* said.   To be sure, as Judge Williams notes, *King* said that we cannot "combine a dissent with a concurrence to form a *Marks* majority."   950 F.2d at 783.   In other words, looking to just the concurrence and dissent alone will never be enough to determine whether one of the opinions is the binding opinion under *Marks*.   As I have

20

\* \* \*

In the event all of the above discussion is a bit difficult to follow, just focus on one key point: If the approaches of the nine Justices in *Freeman* were applied to Epps's case, Epps would lose. That's because Epps would lose under the approaches of Justice Sotomayor and the four dissenters. Yet under this Court's decision in *Epps*, Epps magically has won. In my view, that cannot be correct. How can it be consistent with vertical stare decisis to choose an approach that contradicts the will of a majority of the Supreme Court as expressed in the governing precedent?

I have great respect for my two distinguished colleagues in the *Epps* majority. And I recognize that *Marks* can sometimes seem like a Rubik's Cube. But in my view, the *Epps* decision jumped the rails. To be clear, I certainly do not believe that my colleagues are deliberately flouting Supreme Court precedent. Rather, I simply believe that they have adopted a mistaken approach to *Marks* that in turn will lead to our deciding certain cases in a manner inconsistent with Supreme Court precedent.

---

explained, an opinion is the binding opinion only when it will lead to results with which a majority of the Court would agree in all future cases. And that analysis can be logically conducted only by looking at all of the opinions in the Supreme Court case at issue.

In the rare cases where the *Marks* analysis shows that there was no binding opinion, then the principle that I have described as the *Marks* corollary necessarily applies. For such cases, *King* did not say or purport to say that the views of the dissenters in the Supreme Court case are irrelevant. Put simply, I do not read *King* to direct that we decide a case contrary to how a majority of the Supreme Court in the governing precedent would decide the case.

In his en banc petition, Duvall naturally seeks the benefit of the *Epps* holding.  After all, the relevant facts of his case are indistinguishable from *Epps*.  But in light of my views about *Epps*, I am obviously not inclined to ditch *Duvall* – a case that I believe was decided correctly – in favor of *Epps*.  So I have voted to deny Duvall's en banc petition.  For its part, the Government has let our decisions in *Epps* and *Duvall* co-exist for now, but the Government presumably will seek en banc in an appropriate future case.  If the proper case arises, I will vote to reconsider *Epps* en banc, to overrule it, and to make clear that, as every other court of appeals has held, we must follow Justice Sotomayor's binding opinion in *Freeman*.

WILLIAMS, *Senior Circuit Judge*, concurring in the denial of *en banc*. I have not asked for a vote on whether the panel opinion should be reviewed *en banc*, and write here only to discuss Judge Kavanaugh's suggestion that the related decision in *United States v. Epps*, 707 F.3d 337 (D.C. Cir. 2013), be so reviewed on the first possible occasion.

Judge Kavanaugh argues that Justice Sotomayor's opinion in *Freeman v. United States*, 131 S. Ct. 2685 (2011), states the "narrowest" grounds for allowing relief under 18 U.S.C. § 3582(c)(2), as applied to plea agreements under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and is therefore controlling Supreme Court precedent. Judge Kavanaugh argues that *Epps*'s analysis of when a splintered decision of the Supreme Court produces a binding precedent is inconsistent not only with the Supreme Court's decision in *Marks v. United States*, 430 U.S. 188, 193 (1977), but with our interpretation of *Marks* in *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991). I shall address first, my understanding of *Marks* and *King*, and their application in *Epps*; and second, Judge Kavanaugh's critique of *King*.

It is perfectly true that *Marks* used the metaphor "narrow" to describe the circumstances where one opinion of a splintered set is binding, see, e.g., 430 U.S. at 193, but in *King* we gave that metaphor an analytical interpretation. Specifically, we held that one of several opinions in a decision is binding precedent only when the cases governed by its rule represent a *subset* of the cases governed by the other opinion(s) prevailing in the decision.

Without *King*'s requirement that one be a subset of the other, the idea of "narrowness" is inherently confusing and in fact indeterminate. That is because its application requires guesswork as to the distribution of situations governed by the rules. Let's assume Rules A and B, each setting out grounds

for relief (or any specific outcome) and partially overlapping, as in the illustration below:



As I have drawn Rule B's sphere distinctly smaller than Rule A's, Rule B appears "narrower." But the fact of a non-overlapping area for Rule B creates a measurement problem. How do we know that B's non-overlap area is smaller than A's? Moreover, why should Rule B's set of outcomes be viewed as the valid set where they fail to overlap with those produced under Rule A?

This of course describes the situation in *Freeman*. As the panel opinion in *Epps* recognized, there are cases where Justice Sotomayor's rule calls for relief and the plurality's does not. See *Epps*, 707 F.3d at 350-51 (citing *United States v. Duvall*, 705 F.3d 479, 487-89 (D.C. Cir. 2013) (Williams, J., concurring in the judgment)). These are cases where the *parties' agreement* rests the sentence on a Guidelines provision that has been changed (calling for eligibility for relief under Justice Sotomayor's opinion), but the *court*, though imposing the agreed sentence, rests it upon another Guideline that *the Sentencing Commission has left undisturbed*.

Contrary to Judge Kavanaugh's suggestion, see Kavanaugh, J., *ante* at 12-17, *Freeman* does not satisfy what I earlier called the "weak" reading of *King v. Palmer*, see *Duvall*, 705 F.3d at 487 (Williams, J., concurring in the judgment). Cases producing an outcome in favor of the defendant under Justice Sotomayor's opinion would *not* invariably yield an outcome in his favor under the plurality. In my concurrence in *Duvall*, I used an example of the interplay between the defendant's alleged status as a career offender and the sentence associated with the relevant quantity of crack cocaine. In that hypo, the *parties* choose a Guidelines sentence via the crack cocaine quantity but ignore the career offender status (perhaps because there are procedural defects in previous convictions not worth the trouble of litigation), but the *sentencing judge* finds the career offender status applicable. They arrive at the same sentence, and the judge "accepts" the sentence agreed on by the parties by pronouncing the agreed-upon sentence. The Sentencing Commission subsequently lowers the penalty associated with the relevant quantity of crack distribution.

In such a case, the *Freeman* plurality would deny relief, as the sentencing court will have made clear that the sentence was not "based on a sentencing range that has been subsequently lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). But Justice Sotomayor would grant relief—in her view, it is only the agreement that matters. As I said in my *Duvall* concurrence, "Cases such as this will occur any time the parties to a Rule 11(c)(1)(C) agreement agree to ignore some aspect of an alleged offense that would trigger a mandatory minimum or a mandatory enhancement that the sentencing judge deems inappropriate to ignore, but the agreement yields an ultimate sentence that the judge regards as otherwise 'sufficient, but not greater than necessary,' to achieve the goals of sentencing as required by 18 U.S.C. § 3553(a)." *Duvall*, 705 F.3d at 488 (Williams, J., concurring

in the judgment).  Thus the *Freeman* opinions on § 3582(c)(2) present the sort of case reflected in the diagram above.  In such cases, the simple vision of relative "narrowness" becomes a matter of guesswork as to the distribution of cases among the various possible types.

Of course, even to suppose that such an estimated quantitative disparity would justify treating the "narrower" opinion as controlling rests on a dubious simplifying assumption: that a rule could be characterized as narrower merely because it called for relief in fewer situations.  It is not obvious why such a purely quantitative approach would represent a sensible view of "narrow."

The conditions that we laid out in *King* for the application of *Marks* leave no such ambiguity.  Where (1) Rule B calls for relief in every case where Rule A does, and (2) Rule B calls for relief in no other cases, Rule B is clearly "narrower" than Rule A.  The situation satisfying these criteria is illustrated below:



Here the proposition that Rule B is narrower than Rule A is completely independent of the distribution of factual patterns. It is, in fact, the relationship between the opinions at issue in *Marks* (to wit, the opinions in *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Massachusetts*, 383 U.S. 413 (1966)). By contrast, when the Supreme Court opinions yielding a result are on different wavelengths, as in *Freeman* and in the Supreme Court case at issue in *King* (namely *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 487 U.S. 711 (1987)), characterizing one as narrower than the other is just a kind of judicial *force majeure*.

Judge Kavanaugh repeatedly asserts that the *Freeman* plurality "*always*" calls for eligibility under § 3582(c)(2) because the judge is necessarily applying a Guidelines range. Opinion of Kavanaugh, J., at 1, 9, 13 n.5. But that assertion overlooks the requirement of § 3582(c)(2) that the sentence in question have been based on "a sentencing range *that has been subsequently lowered by the Sentencing Commission* . . . ." In the class of cases discussed above, the *parties' agreement* has based the sentence on a range that has been lowered (controlling under Justice Sotomayor's opinion), but the *court* has based its sentence (controlling under the plurality) on one that has not. Accordingly, Justice Sotomayor's rule is not exclusively a subset of the plurality's.

To put it another way, while the plurality may always find that a sentence was based on *a* Guidelines range, it is not the case that in every situation where Justice Sotomayor finds a sentence to have been based on a Guideline that has been changed the plurality will do so. To find this fact immaterial to the application of *King* to *Freeman*, as Judge Kavanaugh appears to do, is to distort the nature of the dispute in

*Freeman*. It would mean that a court purporting to apply *Freeman* could, after scrutinizing the plea agreement to determine whether a defendant's sentence was based on the Guidelines, then look either to the plea agreement *or to the analysis of the sentencing judge* in assessing whether the defendant was sentenced within a Guidelines range lowered by the Commission. That clearly was not what Justice Sotomayor had in mind; her assessment of defendant Freeman's eligibility for a sentence reduction under § 3582(c)(2) took no account of the reasoning of the sentencing judge. See *Freeman*, 131 S. Ct. at 2699-2700.

Judge Kavanaugh is also mistaken to suggest that *Freeman* can be shoehorned under *King* through use of the phrase "applicable guideline range" from the Application Note to § 1B1.10 of the Guidelines. See Opinion of Kavanaugh, J., at 14-15. How Justice Sotomayor might read "applicable guideline range," which is made relevant through § 3582(c)(2)'s requirement that the requested sentence revision be "consistent with applicable policy statements issued by the Sentencing Commission" (plus the Application Note itself), is irrelevant to whether *Freeman* meets *King*'s requirements for establishing binding precedent: none of the opinions in *Freeman* purports to address the meaning of the Application Note to § 1B1.10 or its relationship to § 3582(c)(2). Rather*, Freeman* addressed only the requirement of § 3582(c)(2) that a sentence be "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."

Thus the proper application of *King* to *Freeman* need consider only whether the plurality would find that a defendant's sentence was based on a subsequently reduced Guidelines range in every instance where Justice Sotomayor would. *King*—and *Marks*, for that matter—are concerned only with the discrete questions actually addressed in the

splintered opinions from which precedent is sought. Judge Kavanaugh's alternative would find a binding precedent (or deny one) with respect to one issue based on speculation as to how a justice might rule on an analytically distinct issue that the splintered opinions had no cause to examine.

The proper application of *King* undeniably means that some Supreme Court decisions yield no binding precedent, but that reality does not trigger vertical *stare decisis* concerns of the sort that trouble Judge Kavanaugh. Such instances are similar to a 4-4 split that affirms the lower court's opinion but does not supply a national rule governing future litigation. See, e.g., *John Wiley & Sons, Inc. v. Kirtsaeng*, 654 F.3d 210, 218 (2d Cir. 2011) (citing the lack of binding authority produced by the 4-4 split in *Costco Wholesale Corp. v. Omega, S.A.*, 131 S. Ct. 565 (2010)). Of course, as actually occurred in *Wiley*, the Supreme Court may follow its splintered decision with a case that resolves the issue. See *Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351 (2013) (resolving the issue 6-3).

Moreover, where the Court resolves a case with a splintered decision and a binding precedent cannot be found under *Marks/King*, the disarray among Supreme Court opinions is in important ways akin to the situation where one or more (indeed, perhaps all but one) courts of appeals have resolved an issue one way. In that case it is the duty of a court of appeals facing the issue *de novo* to resolve it *de novo*, with of course due recognition of the insights and arguments reflected in the opinions of other courts. That independent approach allows the issue to "percolate" and facilitates ultimate Supreme Court resolution on the basis of a broad pallet of lower court reasoning. Cf. *United States v. Mendoza*, 464 U.S 154, 160 (1984) ("Allowing only one final adjudication [on a specified legal issue] would deprive this Court of the benefit it receives from permitting several courts

of appeals to explore a difficult question before this Court grants certiorari."). Similarly, where the justices produce splintered opinions that fail to satisfy *King*'s "subset" principle, the process of continued percolation through independent lower court reasoning yields important value.

Judge Kavanaugh's quest for binding Supreme Court precedent leads him to propose that when lower courts are confronted with such complete disarray that no single view meets even his standards (see Opinion of Kavanaugh, J., at 7-8 (alluding to "no-narrowest-opinion cases")), they should "strive to decide the case before them in a way consistent with how the Supreme Court's opinions in the relevant precedent would resolve the current case." Well, of course, that is what we always try to do. But the question is whether, looking at a set of opinions that reveal no common core, we should pretend that they have offered a unified body of coherent reasoning and treat that synthetic body of reasoning as binding precedent. Pursuing that approach, lower courts would look more like lower officials seeking to discern the intent of their superiors than like judges engaged in discerning and applying rules of law. Courts are still, or should be, institutions of reason, not will.

Judge Kavanaugh's proposed rule for resolving a case where there is no "narrowest" opinion, which entails "run[ning] the facts and circumstances of the current case" through the tests proposed by the various factions of the splintered decision on a case-by-case basis to produce "the result that a majority of the Supreme Court would have reached," Opinion of Kavanaugh, J., at 7, explicitly contemplates including the opinions of dissenting justices in the construction of such a "majority." See *id.* at 8 (citing *Rapanos v. United States*, 547 U.S. 715, 810 (2006) (Stevens, J., concurring)), 10 ("When [Justice Sotomayor] concludes that a plea agreement was not based on the Guidelines, she

would agree with the result reached under Chief Justice Roberts's opinion for four Justices."), 16-17 ("[C]ontrary to *Epps*'s assertion, Justice Sotomayor's opinion would not reach a different result than Justice Kennedy's opinion *or Chief Justice Roberts's opinion* in those career offender or mandatory minimum circumstances.") (emphasis added).

"Foolproof" and "common sense" as Judge Kavanaugh believes this case-by-case majority-seeking approach to be, Opinion of Kavanaugh, J., at 8, it is in fact prohibited by *King*, which stated plainly that "we do not think we are free to combine a dissent with a concurrence to form a Marks majority," 950 F.2d at 783. It is telling that one of the two circuits that have embraced the idea of reliance on dissenting opinions expressly acknowledged that *King* precludes such an approach. See *United States v. Johnson*, 467 F.3d 56, 65 (1st Cir. 2006). Although some individual justices of the Supreme Court appear to have endorsed the idea of relying on dissents, see, e.g., *Rapanos*, 547 U.S. at 810 (Stevens, J., concurring); *Waters v. Churchill*, 511 U.S. 661, 685 (1994) (Souter, J., concurring), the Court as a whole has never contradicted *King*'s prohibition on counting dissenters. For that reason, Judge Kavanaugh's approach is unavailable to this court (unless we re-*en banc King*, which Judge Kavanaugh does not propose). That there is no Supreme Court decision embracing such a viewpoint is not surprising. Dissenting judges enjoy something of the liberty of a gadfly, as the outcome does not in fact depend on what they say. Dissents of course often prove bellwethers, but until they do so, they may inspire but not guide.

In short, the relationship between the opinions in *Freeman* precludes a finding that the Supreme Court has provided binding authority on this aspect of § 3582. Judge Kavanaugh frames his argument as advocating an *en banc* to overrule *Epps*, but in fact his objection is to the principle of

*King v. Palmer.* In its place, he proposes a variation of *Marks* that requires a kind of lower-court clairvoyance into the minds of justices in future Supreme Court majorities. Yet he offers neither a compelling reason to adopt this new rule, nor evidence that *King* has caused the slightest difficulty in the twenty-two years since its adoption. *King* in fact supplied needed clarification for the challenge presented by splintered Supreme Court decisions; I see no reason to drop it now.